## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DEVAUGHN JHERELLE HALL,

   *Petitioner,*

v.                                                     Civil Action No. 3:09cv647

DIRECTOR, VIRGINIA DEPARTMENT OF CORRECTIONS,

   *Respondent.*

### MEMORANDUM OPINION

Petitioner Devaughn Jherelle Hall, a Virginia state prisoner proceeding through counsel,

filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Hall argues that his

trial counsel rendered ineffective assistance by failing to challenge a jury instruction and by

failing to object to improper closing argument. Respondent filed a motion to dismiss (Docket

No. 4), to which Hall has not responded. The matter is ripe for disposition. The Court exercises

jurisdiction pursuant to 28 U.S.C. §§ 636(c) and 2254.

### I. Background and Procedural History

Hall challenges his convictions in the Circuit Court of Brunswick County ("the Circuit

Court") for carjacking and robbery. Hall raises the following claims:

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain
an application for a writ of habeas corpus in behalf of a person in custody pursuant
to the judgment of a State court only on the ground that he is in custody in violation
of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Claim 1:       Trial counsel rendered ineffective assistance by:

        A.        failing to object to the Court's failure to give instructions on principal in the second degree to accompany the jury instructions on the concert of action theory. Hall contends that the failure to give the principal in the second degree instruction violated his right to a finding of guilt beyond a reasonable doubt because the concert of action instruction, coupled with the Commonwealth Attorney's misstatements of the law during closing arguments:

                (i)      constituted impermissible burden-shifting pursuant to *Sandstrom v. Montana*, 442 U.S. 510 (1979); and,

                (ii)     was ambiguous enough to result in a reasonable likelihood that the jury presumed Hall possessed the requisite intent, in violation of *Boyde v. California*, 494 U.S. 370, 380 (1990).

        B.        failing to raise an insufficiency of the evidence claim;

        C.        failing to challenge the prosecutor's misstatement that Petitioner admitted to driving Crenshaw's car away from the scene of the crime;

        D.        failing to argue, in the motion to set aside the verdict, the jury's unconstitutional application of Jury Instruction 13; and,

        E         failing to appeal the Circuit Court's denial of Hall's motion to set aside the verdict.

Because Hall's claims center around allegedly improper jury instructions, it is helpful to present these instructions before considering the circumstances of Hall's convictions. Hall's Jury Instruction 13, which is also Virginia Model Jury Instruction 3.160, reads:

> If there is concert of action with the resulting crime one [of] its incidental probabl[e] consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

(Tr. 193.) Hall contends that "because the concert of action instruction was given without its usual companion, the 'principal in the second degree' instruction, it lacks the essential edict that

2

the jury cannot find concert of action by 'presence or consent' alone." (Pet. ¶ 31.) The requested jury instruction would have read, in essence:

> A principal in the first degree is the person who actually commits the crime. A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime. *Presence and consent alone are not sufficient to constitute aiding and abetting.* It must be shown that the Defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.

(*See* Pet. ¶ 17 (*citing Shaikh v. Johnson*, 666 S.E.2d 325, 327 (Va. 2008) (emphasis added)).[2]

## A. Evidence Adduced at Trial

On the night of August 27, 2005, Hall and Desmond Bonds, both students at St. Paul's College in Lawrenceville, Virginia, robbed and carjacked Fenton Crenshaw, Jr. At trial, the prosecution presented a single theory of the events of that night, corroborated by several witnesses, while the defense presented inconsistent accounts from both Hall and Bonds. Nevertheless, the parties did not dispute that: (1) Crenshaw was carjacked, robbed and struck in the face at least once; (2) Hall, Bonds, and Crenshaw were the only parties present; (3) Hall struck Bonds at least once, and did so before any other party; (4) Hall drove away from the scene in either Crenshaw's or Bonds's vehicle; (5) Bonds was arrested while driving Crenshaw's car on St. Paul's campus on August 30, 2005; (6) on November 8, 2005, a warrant for Hall's arrest issued; (7) police were unable to locate Hall, a member of the St. Paul's football team, on campus; and, (8) Hall was finally arrested in Roanoke on December 8, 2005.

---

[2] Hall does not argue that the prosecutor never presented the jury with a theory of principal liability. Indeed, Hall recognizes that "[t]he trial court submitted two alternative [theories] of guilt to the jury: whether Hall was principally liable for the carjacking, robbery, and use of a firearm in the commission thereof, or, whether he could be found guilty of the same crimes on a theory of concert of action." (Pet. ¶ 35.)

### 1. **Testimony of Fenton Crenshaw, Jr. and Supporting Testimony**

Crenshaw testified that, on August 27, 2005, he stopped at a gas station where he observed a blue Impala. (Tr.58-9, 70.) As he drove away on Route 58, he pulled over to listen to a knocking noise from his car. (Tr. 59.) The same blue Impala pulled up behind him. Hall, the passenger in the blue Impala, approached the window of Crenshaw's car and, when Crenshaw lowered the window, struck him in the face with a pistol.[3] (Tr. 59.) Hall dragged Crenshaw from his car and told Crenshaw to "give up all [his] stuff." (Tr. 59.) Crenshaw gave his money, jewelry, and cell phone to Bonds. (Tr. 60.) They also took Crenshaw's shirt. (Tr. 76.) Hall then drove Crenshaw's car away and Desmond Bonds drove the Impala. (Tr. 60.)

Crenshaw walked to the first house he saw, where the owner, Randy Capps, called 911. (Tr. 67, 82.) Capps testified that Crenshaw was not wearing a shirt when he arrived at Capps's house. (Tr. 83.) Capps also testified that, although Crenshaw claimed to have been struck in the back of the head, Crenshaw did not appear to be in any discomfort. (Tr. 82-83.) Crenshaw's father, Fenton Crenshaw, Sr., testified that Crenshaw's face was bruised and swollen when he saw him at the police station later that evening. (Tr. 99.) Sergeant Todd Cheely of the Brunswick County Sheriff's Department testified that when he arrived at Capps's, Crenshaw was holding his head in a way that indicated "he must have been hurting." (Tr. 102.)

Jeffrey Evans, a mechanic, testified that he installed a new transmission filter in Crenshaw's car in July 2005. (Tr. 129.) Crenshaw brought the car back several times, and Evans

---

[3] Crenshaw described the passenger as a "[t]all, heavy set, brown skinned guy" (Tr. 64), while the driver was "[s]kinny," with light skin, braids, and a tattoo of a word on his neck, the first letter of which was "S" (Tr. 65). These descriptions were consistent with Hall and Bonds, respectively, including the tattoo of the word "Slim" on Bonds's neck. (Tr. 149.)

finally replaced the transmission in June 2006. (Tr. 129.) The knocking Crenshaw described

was consistent with the transmission problems Crenshaw's car was suffering. (Tr. 130.)

## 2. Statement of Devaughn Hall and Supporting Testimony

Hall did not testify at trial. The prosecution, however, introduced the following written

statement, taken by Sergeant Cheely on December 13, 2005:

> Me and Desmond was at the store, and Desmond went in. When he came out he was
> arguing with some dude. He comes to the car and says that dude was talking stuff
> and told him to follow him. So we went riding and the dude pulls beside us, and him
> and Desmond are talking mess back and forth, until he pulls over and the dude pulls
> over behind us. So we get out and they are still talking. So I say if yall are fighting,
> stop talking and do something. The dude swings on me and misses, so I hit him and
> he falls and Desmond jumps on him. Desmond then took his chain, phone, and shirt,
> and tells me to drive his car back, I did it.

(Tr. 114; *see also* Tr. 111.) In response to further written questions by Sergeant Cheely, Hall

denied that anyone had a gun and claimed that Bonds had not taken any money from Crenshaw.

(Tr. 115.) Hall explained that they had left Crenshaw's car at St. Paul's College, but that he had

driven Bonds's car and had never touched Crenshaw's car. (Tr. 115.)

In his defense, Hall also called three fellow members of the St. Paul's football team. (*See*

Tr. 174 (identifying Hall as a member of the St. John's football team).) Marcel Stover claimed

that he saw Hall driving Bonds's car and Bonds driving Crenshaw's car at about midnight on the

night of the incident. (Tr. 153-54.) Stover had previously refused to share this information with

Cheely during the investigation because he "didn't want to" and "didn't feel like [he] had to."

(Tr. 155.) William Prentiss, another member of the St. Paul's football team, testified that Bonds

had showed him a gold chain he had taken. (Tr. 173.) Prentiss also failed to report this to the

police, explaining that he "had nothing to do with it" and that he tried to "stay out of stuff like

it." (Tr. 175.) Leonard Jackson, another member of the St. John's football team, testified that he heard Bonds say that Hall was a "punk for not doing something." (Tr. 178.)

### 3. Testimony of Desmond Bonds

Hall called Bonds as a witness at trial. According to Bonds, he and Crenshaw had "bumped each other" at the convenience store, sparking an argument. (Tr. 140.) Bonds and Crenshaw arranged to meet at a nearby McDonald's to fight. (Tr. 140-41.) They were driving down the highway when Crenshaw pulled over, and Bonds pulled over in front of him. (Tr. 141-42.) Bonds testified that, after the cars stopped, Crenshaw and Hall exited and approached each other, taking off their shirts as they walked. (Tr. 143.) Hall fought with Crenshaw, knocking him to the ground.[4] (Tr. 143.) According to Bonds, "[i]t looked like [Hall] had a gun in his hand." (Tr. 146.) When asked to describe the gun, however, Bonds merely replied, "It was black. All black." (Tr. 150.)

Bonds admitted that he had initially told police that he, and not Hall, had driven Crenshaw's car away. (Tr. 137.) Bonds explained that Hall had threatened Bonds and his family. (Tr. 138.) Specifically, Hall told Bonds that "I am already on probation. I am not going back to jail for nothing, and you know what to do. I know where your family is at, and something can happen to you, too." (Tr. 147.)

### 4. Recovery of Crenshaw's Vehicle and Subsequent Investigation

Several days after the incident, Crenshaw's car was stopped at the guard shack at St. Paul's College. Bonds was driving. (Tr. 108.) Bonds implicated Hall as another suspect in the

---

[4] Prentiss testified - for impeachment purposes only – that Bonds later bragged to Prentiss that Bonds had punched a man and taken his car while Hall merely waited in the car. (Tr. 173.)

robbery. (Tr. 109.) Cheely investigated for several days, but was unable to locate Hall, due in part to lack of cooperation from students at St. Paul's and to not knowing Hall's last name. (Tr. 109.) Eventually Cheely learned Hall's full name, and that Hall was from the Roanoke area. (Tr. 109-10.) An arrest warrant issued on November 8, 2005. (Trial Record 1.) On December 8, 2005, officers in Roanoke arrested Hall. (Tr. 110; Trial Record 1.)

### B. Procedural History

Hall was charged with carjacking, robbery, and two counts of use of a firearm in the commission of a felony. On October 13, 2006, a jury in the Circuit Court for Brunswick County ("the Circuit Court") found Hall guilty of one count of robbery and one count of carjacking.

On October 25, 2007, a three-judge panel of the Court of Appeals of Virginia denied Hall's Petition for appeal. (*Hall v. Commonwealth*, No. 0105-07-2 (Oct. 25, 2007), *available at* Respt.'s Mot. Dismiss, Ex. B.) On March 27, 2008, the Supreme Court of Virginia refused Hall's petition for appeal. (*Hall v. Commonwealth*, No. 072204 (Mar. 27, 2008), *available at* Respt.'s Mot. Dismiss, Ex. E.) On June 13, 2008, the Supreme Court of Virginia denied Hall's petition for re-hearing. (*Hall v. Commonwealth*, No. 072204 (June 13, 2008), *available at* Respt.'s Mot. Dismiss, Ex. F.) Hall did not file a petition for certiorari to the Supreme Court of the United States.

On June 12, 2009, Hall filed a state habeas petition in the Supreme Court of Virginia. Hall raised the following claims:

| | |
|---|---|
| Claim I | The Circuit Court's jury instruction on "concert of action" culpability ("Jury Instruction 13") relieved the prosecutor of his burden to prove beyond a reasonable doubt Hall's state of mind. |

| Claim II | The Commonwealth presented insufficient evidence of Hall's state of mind to sustain a conviction. |
|---|---|
| Claim III | Trial Counsel rendered ineffective assistance by: |

    A.    failing to object to Jury Instruction 13;

    B.    failing to object to the prosecutor's misleading closing remarks on "concert of action" liability;

    C.    failing to challenge the prosecutor's misstatement that petitioner admitted to driving Crenshaw's car away from the scene of the crime;

    D.    failing to argue, in the motion to set aside the verdict, the jury's unconstitutional application of Jury Instruction 13; and,

    E.    failing to appeal the Circuit Court's denial of Hall's motion to set aside the verdict.

The Supreme Court denied relief, finding Claims I and II procedurally barred and Claim III without merit. *Hall v. Director, Dept. of Corr.*, No. 091190 (Oct. 7, 2009) ("State Habeas Op.").

## II. Standard of Review

This Court's power to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A decision is an "unreasonable application" of Supreme Court law "if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Id.* at 407-08. Demonstrating that a state court's decision is unreasonable requires overcoming "a substantially higher threshold" than simply demonstrating error. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (*citing Williams*, 529 U.S. at 410).[5] Additionally, "when assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." *Larry v. Branker*, 552 F.3d 356, 365 (4th Cir. 2009) (alterations in original; internal quotations omitted).

### III.  Ineffective Assistance of Counsel

To prove a constitutional claim for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation was deficient and that actual prejudice stemmed from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Proving deficient representation "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* That is, a petitioner must show that counsel's performance at trial "'fell below an objective standard of

---

[5] In light of the foregoing statutory structure, the findings of the Supreme Court of Virginia and the Circuit Court figure prominently in this Court's opinion.

reasonableness' based on the situation at the time rather than on hindsight." *Buckner v. Polk*, 453 F.3d 195, 201 (4th Cir. 2006) (*quoting Strickland*, 466 U.S. at 688). Proving prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Put differently, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## A.   Claim 1(A):  Unconstitutional Presumption of *Mens Rea*

Hall contends that "the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in [*In re Winship*, 397 U.S. 358 (1970),] on the critical question of petitioner's state of mind" because no accompanying instruction explained that the principles of accomplice liability require a culpable mental state.[6] (Pet. ¶ 16.) The Supreme Court in *Winship* established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." 397 U.S. at 364. Thus, the State may not issue jury instructions that create any mandatory presumption that an element of a crime is present. *Francis v. Franklin*, 471 U.S. 307, 314 (1985). "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Id.* Mandatory presumptions "may be

---

[6]The jury was instructed that:

> If there is concert of action with the resulting crime one [of] its incidental probabl[e] consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

(Tr. 193.)

10

either conclusive or rebuttable," but the Constitution prohibits both. *Id.* at 314 n.2; *see also Patterson v. New York*, 432 U.S. 197, 215 (1977) ("[A] State . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.").

Hall offers two burden-shifting theories. First, Hall argues that the model concert of action instruction, when offered without any instruction regarding accomplice liability, is a *per se* violation of *Sandstrom* because it creates a presumption that Hall possessed the requisite state of mind if the jury found that a crime occurred. Second, Hall argues that the model concert of action instruction, taken alone, is ambiguous, and that the jurors at his trial are reasonably likely to have applied the instruction in a manner that relieved the state of its burden to prove his state of mind. *See Boyde*, 494 U.S. at 380. Because both arguments lack merit, Claim 1(A) will be DISMISSED.

### 1.    Claim 1(A)(i): *Sandstrom* Violation

In Claim 1(a)(i), Hall contends that "Virginia's Model 'concert of action' jury instruction, in the absence of any instruction regarding the requisite state of mind for accomplice liability, unconstitutionally relieves the Commonwealth of proving an element of the crime beyond a reasonable doubt." (Pet. ¶ 17.) In *Sandstrom*, the Court held that jury instructions are improper if "a reasonable juror could [give] the presumption conclusive or persuasion-shifting effect." 442 U.S. at 519. The *Sandstrom* line of cases addresses jury instructions that explicitly create a presumption of intent by using the word "presume."[7] The jury instructions in this case do not,

---

[7]*See Carella v. California*, 491 U.S. 263, 265 (1989) (finding *Sandstrom* violation where jury was told both that a person who did not return a rented vehicle within five days of the expiration of the rental agreement was "presumed to have embezzled" it, and that "intent to

11

and there is no indication that such a challenge would have been successful. Thus, in

determining that Hall suffered no prejudice from trial counsel's failure to make a *Sandstrom*

objection, the Supreme Court of Virginia did not render a decision that was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1). Hall's *Sandstrom* claim therefore

will be DENIED.

### 2.    Claim 1(A)(ii):  *Boyde* Violation

In the alternative, Hall argues that the jury instruction in his case violated *Boyde v.*

*California.* 494 U.S. at 380. In *Boyde*, the Court held that when a petitioner claims that an

"instruction is ambiguous and therefore subject to an erroneous interpretation," the reviewing

court must determine "whether there is a reasonable likelihood that the jury has applied the

challenged instruction in a way that" violates the constitution. *Id.*; *see also Victor v. Nebraska,*

511 U.S. 1, 22 (1994).

### a.    Ambiguity

Hall offers two bases upon which to find the instructions ambiguous. Hall explains that

"because the concert of action instruction was given without its usual companion, the 'principal

in the second degree' instruction, it lacks the essential edict that the jury cannot find concert of

---

commit theft by fraud is presumed" from failure to return it within twenty days of demand for
return); *Yates v. Aiken*, 484 U.S. 211, 211 (1988) (finding unconstitutional instruction that
"malice is implied or presumed from the use of a deadly weapon"); *Francis*, 471 U.S. at 311
(ruling unconstitutional instructions that "[t]he acts of a person of sound mind and discretion are
presumed to be the product of the person's will" and such person is "presumed to intend the
natural and probable consequences of his acts"); *Connecticut v. Johnson*, 460 U.S. 73, 78 n.5
(1983) ("[E]very person is conclusively presumed to intend the natural and necessary
consequences of his act."); *Sandstrom*, 442 U.S. at 515 (ruling unconstitutional instructions that
"'[t]he law presumes'" the same (alteration in original)).

action by 'presence or consent' alone." (Pet. ¶ 31.) Secondly, Hall asserts that "[n]ot only were the jury instructions ambiguous at Hall's trial, but the Commonwealth's Attorney also exploited the instructions' ambiguousness during closing arguments" (Pet. ¶ 26) by "encourag[ing] the jury to find concert of action if they believed evidence that Hall 'did anything'" (Pet. ¶ 32).

Hall's arguments lack merit. In the first instance, the term "concert of action" communicates an element of agreement. According to Webster's dictionary, the primary definition of "concert" is "agreement in design or plan; union formed by mutual communication of opinion and views." Thus, the instruction itself communicated to the jury that Hall could not have been convicted based on his mere presence at the scene of the crime.

As for the prosecutor's comments, a more thorough review of his remarks in context shows that the prosecutor did not rely on Hall's mere presence or consent:

> If Hall, the defendant, if he did anything during this carjacking – robbery, even if Bonds did some of it. . . . It doesn't matter. It is concert of action. It was a robbery that was done together. The defense spends its whole case – it is Bonds – Bonds. He is the evil one.
> Yet the defendant, himself, told you in his statement that he was there. He actively participated. That is concert of action. There is no question about identity of the act[or] independently in this case.
> The two people there were Desmond Bonds and the defendant. Bonds is not on trial. Is he guilty? Yes. It is the definition of concert of action, but he is not on trial. The issue for you is [Petitioner]. I urge you *not to be caught up in the details of who took what piece of what item, or things like the driving the car away. The defense is going out of its way to say that Bonds drove the car away.* It doesn't matter. They were together, participating. They are equally guilty. . . .
> . . . .
> So our theory of the case is simple. You don't even need to reach concert of action . . . . But if you have any concerns about concert of action, as long as you find that he was there and at least participated in some way, shape, form, or fashion. He clearly did by his own admission. You got concert of action by the two men.

(Tr. 206-09 (emphasis added).) Thus, contrary to Hall's arguments, the prosecutor did not urge the jury to convict Hall merely because he was present at the scene. Instead, the prosecutor explained that if Hall and Bonds were committing a crime jointly, Hall could also be liable for Bonds's criminal acts that arose out of the crime originally planned. The Court does not find any ambiguity created thereby.

### b. Reasonable Likelihood of Unconstitutional Application

Hall goes on to argue that "it is reasonably likely that the jury applied the constitutionally deficient instruction to Hall's trial by making a conclusive or 'mandatory presumption of intent upon proof by the State of other elements of the offense[]." (Pet. at ¶ 20 (*citing Francis*, 471 U.S. at 313).) In support of his argument, Hall asserts that "[e]vidence from Crenshaw's and Bonds'[s] account[s], which was inextricably tied to the theory that Hall had acted as principal, could not be the basis to presume any finding of criminal intent on the theory of concert of action." (Pet. ¶ 33.) "Their testimony only had a logical tendency to support a finding that Petitioner was guilty as principal in the first degree of all four charges." (Pet. ¶ 51.) Hall concludes that "[t]he only evidence adduced at trial material to the theory of concert of action was Hall's voluntary statement." (Pet. ¶ 48.) Thus, "[f]or Hall to have been acquitted of both gun charges means that the jury could only have relied on Hall's voluntary statement and the concert of action Jury Instruction." (Pet. ¶ 46.)

These assertions do not persuade. As the Supreme Court of Virginia noted, "petitioner's contention that he was convicted under a concert of action theory is flawed because *the jury could have rejected the evidence that he possessed firearms and [nevertheless] believed that petitioner struck the victim and took the victim's property and vehicle.*" (State Habeas Op. 5

14

(emphasis added).) The Court simply cannot credit Hall's argument that the jury must have completely disregarded the testimony of Bonds and Crenshaw. Hall also argues that the prosecutor's statements during closing argument created a reasonable probability of an unconstitutional application. As discussed in Section III.A.2.a, the prosecutor's remarks, when taken in context, adequately communicate the need to find that Hall committed some crime jointly with Bonds.[8] Accordingly, no reasonable probability of an unconstitutional application of the concert of action instruction appears.

### c. Conclusion

Hall has not demonstrated that the model concert of action instruction, unaccompanied by the accomplice liability instruction, creates an ambiguity on this record. Even if Hall had made such a showing, Hall's arguments regarding the manner in which that instruction must have been applied are unpersuasive, and fail to show a reasonable probability of any constitutional violation. Accordingly, the decision of the Virginia Supreme Court that the failure of Hall's counsel to object to the instruction on these grounds was neither deficient nor prejudicial was not an unreasonable interpretation of federal law. Claim 1(A)(ii) will be DISMISSED.

---

[8] Additionally, the trial judge admonished the jury at the beginning of the trial:

After the evidence, I will instruct you on the law that is to be applied in this case. . . . [A]ll of the law you need to know in this case, I will give to you . . . . in two ways. One of them, I am going to read it to you and instruct you on what it is; and two, I am going to give it to you in writing.

So the instructions that I read to you, I will send with you back to the jury room. So you can refer to them. That is all you will need to know. You will hear opening statements, and I will tell you what the law is, and then you will hear final argument.

(Tr. 34-35.)

## B.    Claim 1(B):  Sufficiency of the Evidence

Hall claims that counsel should have raised a sufficiency of the evidence claim because "no rational trier of fact could have found sufficient evidence that Hall was guilty beyond a reasonable doubt on a concert of action theory." (Pet. ¶ 14.)  As explained in Section III.A.2.b, *supra*, Hall has not established that he was convicted pursuant to a concert of action theory.  The possibility exists that he was convicted as a principal.  In the interests of justice, the Court will consider whether the prosecution presented sufficient evidence to convict Hall as a principal as well as pursuant to a convert of action theory.

### 1.    Relevant Principles of Virginia Law

In Claim 1(B), Hall asserts that his counsel failed to prevent Hall's conviction on what he contends is constitutionally insufficient evidence.  Federal law[9] prohibits the conviction of any defendant if, on the evidence adduced, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (*citing Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).  In order to establish robbery, the Commonwealth must show that a defendant "took property from the victim by force, threats, or violence, and that the intent to steal co-existed with the act of force." *Pugliese v. Commonwealth*, 428 S.E.2d 16, 24 (Va. Ct. App. 1993) (citation

---

[9] Hall does not contend that counsel should have raised any such claim under Virginia's somewhat more lenient standard for convictions based only on circumstantial evidence. *See Bishop v. Commonwealth*, 313 S.E.2d 390, 393 (Va. 1984) (requiring evidence to "exclude every reasonable hypothesis of innocence").

omitted). A conviction for carjacking requires proof that the defendant, by using violence or "'otherwise placing a person in fear of serious bodily harm,'" intentionally seized control of a vehicle with intent to deprive the victim of possession. *Pressley v. Commonwealth*, 679 S.E.2d 551, 554 (Va. Ct. App. 2009) (*quoting Spencer v. Commonwealth*, 592 S.E. 400, 402 (Va. Ct. App. 2004)); *see also* Va. Code § 18.2-58.1.

When evaluating the evidence against Hall, it must be noted that concert of action is a "species of accomplice liability, carrying with it the principle that the punishment imposed on each accomplice may be the same." *Davis v. Commonwealth*, 549 S.E.2d 631, 633 (Va. Ct. App. 2001.) Unlike most theories of accomplice liability, which require the defendant to "'share in the principal's criminal intent,'" lack of intent to commit the crime charged is no defense to liability under a concert of action of theory. *Thomas v. Commonwealth*, 688 S.E.2d 220, 234 (Va. 2010) (*quoting McMorris v. Commonwealth*, 666 S.E.2d 348, 351 (Va. 2008)). Instead, the prosecutor must show concert of action to "commit a wrongful act" and that the resulting crime was "one of the incidental probable consequences" of the consummation of the act. *Id.* (*quoting Brown v. Commonwealth*, 107 S.E. 809, 811 (Va. 1921)).[10] Convicting under a concert of action theory imposes "no obligation to prove the respective roles of two or more criminals who, as shown by the evidence, acted in concert to commit an offense." *Fitzgerald v. Commonwealth*, 313 S.E.2d 394, 396 (Va. 1984). In a forgery trial, for example, "it is immaterial whether [defendant] actually cashed the checks, or whether they were forged by one person, endorsed by [defendant], and cashed by the forger or by a third person." *Id.*

---

[10] Concert of action liability is thus similar to the felony-murder rule. *See Rollston v. Commonwealth*, 399 S.E.2d 823, 828 (Va. Ct. App. 1991).

## 2.    Analysis

The Supreme Court of Virginia rejected Hall's arguments on state habeas review, explaining that trial counsel's performance was neither deficient nor prejudicial because "[t]he record, including the trial transcript, demonstrates that the evidence presented at trial was sufficient for a jury to convict petitioner . . . as a principal in the first degree or under a concert of action theory." (State Habeas Op. 5.) Thus, petitioner must show that the Supreme Court of Virginia reached an unreasonable decision in determining that the prosecutor presented evidence sufficient to sustain a conviction.

The prosecution presented evidence sufficient for a rational juror to convict Hall under the concert of action theory. Indeed, the record before the Court shows that a rational juror could have convicted Hall as a principal.[11] Hall offered no reason for Crenshaw to have fabricated his testimony, which was essentially unimpeached. Witnesses corroborated Crenshaw's version of events that Hall struck him in the face by testifying that Crenshaw did not appear to have been in a full-blown fight, instead appearing either unhurt or bruised in one location on his face. (Tr. 82-83 (Capps testifying that Crenshaw did not appear injured), Tr. 99 (Fenton Crenshaw, Sr. testifying that his son's face was bruised and swollen), Tr. 102 (Sergeant Cheely testifying that Crenshaw appeared to have hurt his head); *see also* Tr. 90 (replaying 911 call in which Capps

---

[11] While not strictly relevant to the sufficiency of the evidence, it is helpful to remark on the weakness of Hall's theory of defense. Hall's argument required the jury to believe: (1) that Crenshaw agreed to leave the convenience store to stage a fistfight at another public place; (2) that Crenshaw became so eager to fight that, instead of proceeding according to his plan, he pulled over on the side of a deserted highway to confront both Hall and Bonds; (3) that Crenshaw drew the much larger Hall into the conflict by throwing a punch at him (*see* Tr. 202-03 (explaining, during closing arguments, that the jury was entitled to rely on inferences drawn from the fact that Crenshaw was "not a large man," while Hall "look[ed] like an offensive lineman")); and, (4) that after being soundly beaten, Crenshaw continued to provoke Bonds and Hall.

replies negatively to operator's question whether Crenshaw was "beat up or anything like that").)
Finally, the evidence indicated that Hall not only fled the scene of the crime, but fled campus in
the middle of the semester and football season and returned to his home in Roanoke. This
suggests consciousness of guilt. Thus, the evidence that Hall committed a robbery and
carjacking was not only sufficient, but persuasive.

Regarding the concert of action theory, Hall argues that "[n]o rational jury could have
found on the evidence adduced at trial that Hall was guilty of carjacking and robbery as principal
in the first degree, but was not guilty of the use of a firearm." (Pet. ¶ 46.) As explained in
Section III.A.2.b, the Court is not limited to considering whether Hall's statement, standing
alone, provides sufficient evidentiary support to sustain his conviction under a concert of action
theory. Considering all of the evidence, the prosecution presented ample circumstantial evidence
to support several scenarios of concerted action by Hall and Bonds. A rational juror easily could
have inferred that Hall and Bonds agreed that Bonds would fight Crenshaw at the McDonald's,
or at the side of the road. Alternatively, a rational juror also could have inferred that Hall and
Bonds agreed to assault, rob, and/or carjack Crenshaw upon finding his car stopped on the side of
the road. Either of these hypotheses are supported by Hall's own assertions that he urged the
parties to stop talking and fight, and that he drove Bonds's car away instead of reporting the
crime to the police. Thus, Hall's claim that the prosecution presented insufficient evidence to
sustain a conviction under the concert of action theory lacks merit.

### 3.      Conclusion

The record reveals ample support for the conclusion by the Supreme Court of Virginia
that "[t]he record, including the trial transcript, demonstrates that the evidence presented at trial

was sufficient for a jury to convict petitioner . . . as a principal in the first degree or under a concert of action theory." (State Habeas Op. 5.) The decision was not founded on any unreasonable determination of fact or application of law. Accordingly, Claim 1(B) will be DISMISSED.

### C.     Claim 1(C):  Prosecutorial Misconduct

In Claim 1(C), Hall faults counsel's failure to object to the prosecution's remark that, according to Hall's own statement, Hall drove away in Crenshaw's car. The state habeas court rejected this claim, explaining that:

> The record, including the trial transcript, demonstrates that even though the prosecutor may have misspoken when the prosecutor said the petitioner drove the car away, counsel read petitioner's statement during the closing argument, including the portion where petitioner stated he did not touch the victim's car and that he drove the other assailant's car.

(State Habeas Op. 4.) Thus, the court concluded that Hall had demonstrated neither deficiency nor prejudice due to counsel's failure to object.

Based on the totality of the closing arguments and the evidence adduced at trial, no reasonable probability exists that the prosecutor's misstatement left the jury with an unfair impression of Hall's statement. Hall therefore fails to demonstrate that the state habeas court's decision was unreasonable. Claim 1(C) will be DISMISSED.

### D.     Claim 1(D): Failure to Properly Raise a Sufficiency of the Evidence Claim in Counsel's Post-Trial Motion

In his post-trial motion to set aside the verdict, counsel argued that the prosecution did not present evidence sufficient to convict Hall as a principal in the first or second degree. (Tr. 250.) In Claim 1(D), Hall claims that counsel also should have argued that the prosecution failed

to present sufficient evidence to convict Hall under a concert of action theory. As discussed in

Section III.B, *infra*, not only has Hall failed to show that he was convicted pursuant to the

concert of action theory, the prosecution presented evidence sufficient to sustain a conviction

either as a principal or pursuant to the concert of action theory. There exists no legal basis for

concluding that the trial court would have set aside the verdict had counsel also raised the

sufficiency of the evidence with respect to the concert of action theory. Thus, the conclusion of

the Supreme Court of Virginia that this claim "satisfies neither the 'performance' nor the

'prejudice' prong of the two-part test enunciated in Strickland" was not unreasonable. (State

Hab. Op. 4-5.) Claim 1(D) will be DENIED.

## E.    Claim 1(E): Failure to Raise the Insufficiency of the Evidence on Appeal of the Court's Denial of Hall's Motion to Set Aside the Verdict

In Claim 1(E), Hall claims that counsel's deficient failure to raise at the conclusion of

trial the sufficiency of the evidence with respect to the concert of action theory, as related in the

discussion of Claim 1(D), *supra*, was compounded by counsel's failure to raise the issue on

appeal. As discussed in Section III.D, *supra*, counsel's failure to raise this issue at the conclusion

of trial was neither deficient nor prejudicial. The failure of counsel to raise the issue on appeal

likewise created neither deficiency nor prejudice. Thus, the conclusion of the Supreme Court of

Virginia that this claim "satisfies neither the 'performance' nor the 'prejudice' prong of the two-

part test enunciated in Strickland" was not unreasonable. (State Hab. Op. 5.) Claim 1(E) will be

DENIED.

21

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Respondent's motion to dismiss. An appropriate Order shall issue.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Hall is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

It is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-7-10